## UNITED STATES *v.* SCHIDER, TRADING AS "JOS. L. SCHIDER & CO."

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 468.    Argued March 6, 1918.—Decided April 15, 1918.

Within the general terms of the Food & Drugs Act (c. 3915, 34 Stat. 768, §§ 7–8), a bottled article labeled "Compound Ess Grape," but which contains nothing from grapes and is a mere imitation, must be deemed adulterated, since some other substance has been substituted wholly for the one obviously indicated by the label, viz., "compound essence of grape," and also misbranded, since the label carries a false and misleading statement.

In such case the mere use of the word "compound" is not a compliance with the proviso in paragraph fourth of § 8 of the act, since it does not give notice that the article is a pure imitation but suggests the contrary.

Reversed.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Frierson,* with whom *Mr. Chas. S. Coffey* was on the brief, for the United States.

*Mr. Joseph S. Rosalsky,* with whom *Mr. Jacob I. Berman* was on the brief, for defendant in error.

MR. JUSTICE McREYNOLDS delivered the opinion of the court.

An indictment containing six counts charged defendant, Schider, with violating the Food & Drugs Act of June 30, 1906, 34 Stat. 768, by delivering for shipment in interstate commerce food contained in a bottle plainly labeled as follows:

Compound
Ess Grape

———

Jos. L. Schider & Co.
93–95 Maiden Lane, New York.

Each count alleged the article was an imitation of grape essence artificially prepared from alcohol, water and synthetically produced imitation oils and contained no product of the grape nor any added poisonous or deleterious ingredient; and that the word "imitation" nowhere appeared.

The first count further alleged it was "unlawfully adulterated in that an imitation grape essence artificially prepared from alcohol, water and synthetically produced imitation essential oils had been wholly substituted for a true grape product, which the article purported to be"; and the second that it was "unlawfully adulterated in that an imitation grape essence artificially prepared from alcohol, water and synthetically produced imitation essential oils, had been mixed with the said article so as to reduce and lower and injuriously affect the quality and strength of the said article."

The third, fourth, fifth, and sixth counts, in varying ways, further alleged misbranding so as to deceive and mislead in that the label indicated a true grape product, whereas the article was not such but an imitation artificially prepared, one which contained nothing from grapes.

The trial court sustained a demurrer to each count upon the view that, properly construed, the Food & Drugs Act did not apply to facts stated.

Pertinent portions of the act follow:

"Sec. 7. That for the purposes of this Act an article shall be deemed to be adulterated: . . .

"First. If any substance has been mixed and packed with it so as to reduce or lower or injuriously affect its quality or strength.

"Second. If any substance has been substituted wholly or in part for the article.

"Sec. 8. That the term 'misbranded,' as used herein, shall apply to all drugs, or articles of food, or articles which enter into the composition of food, the package or label of, which shall bear any statement, design, or device regarding such article, or the ingredients or substances contained therein which shall be false or misleading in any particular, and to any food or drug product which is falsely branded as to the State, Territory, or country in which it is manufactured or produced.

"That for the purposes of this Act an article shall also be deemed to be misbranded: . . .

"First. If it be an imitation of or offered for sale under the distinctive name of another article.

"Second. If it be labeled or branded so as to deceive or mislead the purchaser, . . .

"Fourth. If the package containing it or its label shall bear any statement, design, or device regarding the ingredients or the substances contained therein, which statement, design, or device shall be false or misleading in any particular: *Provided*, That an article of food which does not contain any added poisonous or deleterious ingredients shall not be deemed to be adulterated or misbranded in the following cases: . . . Second. In the case of articles labeled, branded, or tagged so as to plainly indicate that they are compounds, imitations, or blends, and the word 'compound,' 'imitation,' or 'blend,' as the case may be, is plainly stated on the package in which it is offered for sale: . . ." (34 Stat., c. 3915, pp. 768, 770–771.)

The obvious and undisputed purpose and effect of the label was to declare the bottled article "a compound essence of grapes." In fact, it contained nothing from grapes and was a mere imitation.

Within the statute's general terms the article must be

deemed adulterated since some other substance had been substituted wholly for the one indicated by the label; and, also, it was misbranded, for the label carried a false and misleading statement.

Defendant relies on the proviso in §.8 which declares articles of food shall not be deemed adulterated or mis-branded if they are "labeled, branded, or tagged so as to plainly indicate that they are compounds, imitations, or blends, and the word 'compound,' 'imitation,' or 'blend,' as the case may be, is plainly stated on the package in which it is offered for sale." But we are unable to con-clude that by simply using "compound" upon his label a dishonest manufacturer exempts his wares from all inhibi-tions of the statute and obtains full license to befool the public. Such a construction would defeat the highly be-neficent end which Congress had in view.

We have heretofore said: "The purpose of the act is to secure the purity of food and drugs and to inform pur-chasers of what they are buying. Its provisions are di-rected to that purpose and must be construed to effect it." *United States* v. *Antikamnia Co.*, 231 U. S. 654, 665. "The legislation, as against misbranding, intended to make it possible that the consumer should know that an article purchased was what it purported to be; that it might be bought for what it really was and not upon misrepre-sentations as to character and quality." *United States* v. *Lexington Mill & Elevator Co.*, 232 U. S. 399, 409. And see *United States* v. *Coca Cola Co.*, 241 U. S. 265, 277.

The stuff put into commerce by defendant was an "im-itation" and if so labeled purchasers would have had some notice. To call it "compound essence of grape" certainly did not suggest a mere imitation but on the contrary falsely indicated that it contained something derived from grapes. See *Frank* v. *United States*, 192 Fed. Rep. 864. The statute enjoins truth; this label exhales deceit.

The trial court erred in sustaining the demurrer. Its judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

*Reversed and remanded.*