**UNITED STATES v. ALBERTY.**

No. 18183–BH.

District Court, S. D. California, Central Division.

May 20, 1946.

Charles H. Carr, U. S. Atty., and James M. Carter, Ernest A. Tolin, and Walter S. Binns, Asst. U. S. Attys., all of Los Angeles, Cal., for plaintiff.

Hauerken, Ames & St. Clair, of San Francisco, Cal., and O'Connor & O'Connor, of Los Angeles, Cal., for defendant.

HARRISON, District Judge.

This is a criminal case wherein the defendant is charged in twenty-three counts with a violation of the Federal Food, Drug, and Cosmetic Act, Title 21 U.S.C.A. Sec. 301 et seq. All counts, with the exception of Count XXIII, have been dismissed, and the case has been submitted to me on an agreed stipulation of facts, jury trial having been waived by both parties.

All the allegations of Count XXIII are admitted, except that the defendant denies the offending circular accompanied the drug in interstate commerce within the definition of "labeling" under the provisions of 21 U.S.C.A. § 321(m): "Sec. 321(m)—The term 'labeling' means all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article."

The stipulation of facts discloses that the leaflets were shipped on February 7, 1944, while the drugs were not shipped until April 25, 1944. Thus there was a lapse of seventy-one days between the shipping of the offending circulars and the drug. Both were shipped in interstate commerce, had a common destination, and were displayed together.

Thus the sole issue is whether the drug and leaflets accompanied each other within the purview of the Act. Stating the issue differently, can the salutary objectives of the Act be circumvented by permitting a lapse of time to exist between the shipment of the drugs and offending leaflets from a common source to a common destination? I think not.

I have been able to find but three cases that may be deemed as precedents. The first case is one from our own circuit, to-wit: United States v. Research Laboratories, Inc., 9 Cir., 126 F.2d 42, 45, wherein the Court stated: "The libel does not state, nor is it material, whether the packages and circulars did or did not travel in the same crate, carton or other container, or on the same train, truck or other vehicle during their interstate journey. The packages and the circulars had a common origin and a common destination and arrived at their destination simultaneously. Clearly, therefore, they accompanied each other, regardless of whether, physically, they were together or apart during their journey."

The defendant feels that this case supports her position because of the simultaneous arrival of the offending articles. The facts in United States v. Research Laboratories, Inc., supra, indicated a simultaneous arrival and that was as far as the Court was called upon to go. The Court's attitude towards a liberal interpretation of this Act is clearly brought out, when the Court further stated: "The rule of strict construction invoked by appellee has little or no application to statutes designed, as the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 301 et seq., is designed, to prevent injury to the public health. A. O. Andersen & Co. v. United States, 9 Cir., 284 F. 542, 543; United States v. 48 Dozen Packages of Gauze, 2 Cir., 94 F.2d 641, 642."

The second case that conforms to my conclusions is United States v. Lee, 7 Cir., 131 F.2d 464, 466, 43 A.L.R. 1451. As in the case at bar, the circulars were shipped in interstate commerce separately from the products to which they relate. Therein the Court held as follows: "The word 'accompany' is not defined in the Act, but we observe that among the meanings attributed to the word are 'to go along with,' 'to go with or attend as a companion or associate,' and 'to concur in association with,' Webster's New International Dictionary, 2d Ed. There can be no question that among the usual characteristics of labeling is that of informing a purchaser of the uses of an article to which the labeling relates, and that the basic character of the Federal Food, Drug, and Cosmetic Act is not directly concerned with the sale of the products therein described, or whether the literature is carried away by the purchaser. It was enacted to protect the public health and to prevent fraud, and it ought to be given a liberal construction. Consequently, we are impelled to the conclusion that misbranding is cognizable under the Act if it occurs while the articles are being held for sale."

The third case is United States v. 7 Jugs, etc., D.C., 53 F.Supp. 746, 755,

wherein an attempt was made to circumvent the Act by permitting a lapse of time to occur between the shipment of the related articles. The Court disposed of this issue in the following language: "The physical aspects of the transportation are not important. What is vital here are such factors as interdependence of the drug and the booklets, common origin, common destination, display, distribution and use together. These determine whether there has been that degree of accompaniment which provides the necessary 'misbranded' status under Section 304(a). The mere fortuitous circumstance of an absence of physical association between the booklets and drugs during the interstate journey of the drugs does not in my opinion control."

Besides the foregoing formidable authorities, common sense and reason dictates the same conclusion. The Act was primarily promulgated to protect the consuming public. United States v. Two Bags, etc., 6 Cir., 147 F.2d 123-127. If that is true, what difference does it make in what manner the circular and drug made their interstate journey, so long as they eventually came together upon the merchant's shelf, there to mislead and defraud the consuming public? When the drug and related circular came together, the prohibited act occurred, irrespective of the circuitous route each may have traveled.

The Act involved has with unanimity been liberally construed to protect the consuming public from the avaricious. United States v. 95 Barrels of Vinegar, 265 U.S. 438, 44 S.Ct. 529, 68 L.Ed. 1094; United States v. Antikamnia Chemical Co., 231 U.S. 654, 655, 34 S.Ct. 222, 58 L.Ed., 419; United States v. Schider, 246 U.S. 519, 522, 38 S.Ct. 369, 62 L.Ed. 863; A. O. Andersen and Co. v. United States, 9 Cir., 284 F. 542; C. C. Co. v. United States, 5 Cir., 147 F.2d 820; United States v. Commercial Creamery Co., D.C., 43 F.Supp. 714.

The defendant relies solely upon a strict interpretation of the statute invoking the principle set forth in the dissenting opinion of Mr. Justice Murphy in United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48, and again in the recent opinion of the Supreme Court in M. Krause & Bros. v. United States, 66 S.Ct. 705.

The cases heretofore cited clearly indicate that our courts have not applied the usual rule of strict construction of criminal statutes to this Act, but have given it a liberal construction and thus enabled the Act to accomplish its remedial purpose of protecting public health and pocket book against misbranded foods and drugs.

"Regard for these purposes should infuse construction of the legislation if it is to be treated as a working instrument of government and not merely as a collection of English words. * * * But that is not the way to read legislation. Literalism and evisceration are equally to be avoided." Mr. Justice Frankfurter in United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 136, 88 L.Ed. 48.

"All construction is the ascertainment of meaning. And literalness may strangle meaning." Mr. Justice Frankfurter in Utah Junk Co. v. Paul A. Porter, etc., 66 S.Ct. 889, 892.

If this Act is to be treated as a working instrument and not merely as a collection of English words, it must be interpreted as a living and vitalized Act. The defendant seeks, through literalism and evisceration, to avoid her studied attempt to circumvent the Act.

I hold that the word "accompany" as used in the Act means that when a drug and a related circular, having a common source and a common destination, come together at their destination, they are united and become one in so far as the buying public is concerned, each, in effect, accompanying the other, whether they arrived at their common destination simultaneously or otherwise.

In view of my conclusions herein expressed, it is my opinion the drug described in Count XXIII was misbranded contrary to the provisions of the Federal Food, Drug, and Cosmetic Act, and therefore the defendant is guilty as charged.