**UNITED STATES v. KORDEL (three cases).**

District Court, N. D. Illinois, E. D.

June 26, 1946.

J. Albert Woll, U. S. Atty., and R. C. Eardley, Asst. U.S. Atty., both of Chicago, Ill., for plaintiff.

James W. Breen, of Chicago, Ill., for defendants.

LA BUY, District Judge.

There are three informations, comprising twenty counts, brought against Laura Kordel and Lelord Kordel for violation of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 301 et seq., by misbranding. A stipulation between Lelord Kordel trading as Gotu Kola Distributors and as Lelord Kordel Products, and as Lelord Kordel Products and Nutrition Enterprises, has been filed wherein the facts contained in the three informations are agreed. This stipulation is not made by Laura Kordel and is not to be construed as admissions by her.

With the stipulation of facts as stated in the informations, the only question tried by the court was whether the violation has been proved by the evidence.

The main contention of defendants' counsel is that since the booklets did not, in a number of counts, physically accompany the drugs they did not therefore "accompany" the drug within the meaning .of Section 321(m) of the Act. Defendants' counsel urges a strict construction of the word "accompany" since this is a criminal action and that the penal provisions of the Federal Food, Drug and Cosmetic Act be strictly construed.

It is necessary first to determine the nature of the statute before us. The United States Supreme Court in the case of United States v. Dotterweich, 1943 320 U.S. 277, 64 S.Ct. 134, 136, 88 L.Ed. 48, said: "The purposes of this legislation thus touch phases of the lives and health of people which, in the circumstances of modern industrialism, are largely beyond self-protection. Regard for these purposes should infuse construction of the legislation if it is to be treated as a working instrument of government and not merely as a collection of English words." Also, in United States v. Antikamnia Co., 1914, 231 U.S. 654, 34 S.Ct. 222, 58 L.Ed. 419, and United States v. Schider, 1917, 246 U.S. 519, 38 S.Ct. 369, 370, 62 L.Ed. 863: "The purpose of the act is to secure the purity of food and drugs and to inform purchasers of what they are buying. Its provisions are directed to that purpose and must be construed to effect it."

It is apparent, therefore, that the purpose of the law is the ever-insistent consideration in its interpretation. Congress by enacting it intended to promote honesty and fair dealing in trade and secure to the public pure and wholesome food and drugs and there must be a reasonable construction to carry out the intention of Congress. This being "remedial legislation", the rule of liberal construction is to be followed irrespective of its penal provisions.

Mr. Justice Story in Taylor et al. v. United States, 1845, 3 How. 197, 11 L.Ed. 559, stated this principle as follows: "In one sense, every law imposing a penalty or forfeiture may be deemed a penal law; in another sense, such laws are often deemed, and truly deserve to be called remedial. The judge was, therefore, strictly accurate, when he stated that 'It must not be understood that every law which imposes a penalty is, therefore, legally speaking, a penal law, that is, a law which is to be construed with great strictness in favor of the defendant. Laws enacted for the prevention of fraud, for the suppression of a public wrong, or to effect a public good, are not, in the strict sense, penal acts, although they may inflict a penalty for violating them.' And he added, 'It is in this light I view the revenue laws, and I would construe them so as most effectually to accomplish the intention of the legislature in passing them.' The same distinction will be found recognized in the elementary writers, as, for example, in Blackstone's Commentaries * * * and Bacon's Abridgement * * * and Comyns' Digest * * * and it is also abundantly supported by the authorities."

The word "accompany" has been defined in a number of cases. See United States v. Lee, 7 Cir., 1942, 131 F.2d 464, 143 A.L.R. 1451; United States v. Research Laboratories, Inc., 9 Cir., 1942, 126 F.2d 42, certiorari denied 317 U.S. 656, 63 S.Ct. 54, 87 L.Ed. 528; United States v. 7 Jugs, etc., Dr. Salsbury's Rakos, D.C.Minn., 1944, 53 F.Supp. 746, 755. An excellent analysis was made by District Judge Joyce in the Rakos case supra. He said:

"The word 'accompany' as used in Section 201(m) (2) was said in United States v. Lee, 7 Cir., 1942, 131 F.2d 464, 466, 143 A.L.R. 1451, to mean: 'The word "accompany" is not defined in the Act, but we observe that among the meanings attributed to the word are "to go along with," "to go with or attend as a companion or associate," and "to occur in association with," Webster's New International Dictionary, 2d Ed.' Naturally, the meanings of accompany will vary in connection with subject matter. 'Accompany' as used in this Act is used to describe a relationship between an article of drug and its labeling. Since there 'can be no question that among the usual characteristics of labeling is that of informing a purchaser of the uses of an article to which the labeling relates' (United States v. Lee, 131 F.2d at page 466), the booklets here involved should be scrutinized from this viewpoint. * * *

"The stipulation clearly shows that the printed matter and the drugs had a common origin. They had a common destination in that both were intended to come together in the stores of dealers in Achilles' territory. They were interlocking units of a distributional scheme the objective of which was ultimate association and distribution together. There was actual, physical association together in the

stores of dealers and actual distribution together in connection with purchases by farmers. It is fair to conclude that these booklets were prepared, shipped and distributed to dealers with the ultimate expectation and intention on the part of the Laboratories that they would serve the purpose of labeling for the three articles of merchandise here involved. Without the booklets, the products themselves lacked labeling, at least in so far as informing purchasers of the purposes and uses of the remedies. The mere fact that the products were shipped at different times, over a different route and were received at a different time from the booklets should not be permitted to confuse or obscure the substance of the matter. * * *

"What is vital are such factors as interdependence of the drug and the booklets, common origin, common destination, display, distribution and use together. These determine whether there has been that degree of accompaniment which provides the necessary 'misbranded' status under Section 304(a) [21 U.S.C.A. § 334(a)]. The mere fortuitous circumstance of an absence of physical association between the booklets and drugs during the interstate journey of the drugs does not in my opinion control."

■■ It is contended by defendant that the above cited cases were brought under libels of information for the condemnation of the articles involved; that these were civil proceedings; that the present case involves the criminal aspects of the statute and the definition should therefore be differently construed. To adhere to defendant's construction would result in a strange situation wherein under the same statute and the same section, a single word would have a different meaning dependent only on the nature of the action brought. This interpretation would defeat the enforcement of the statute and the court cannot subscribe to such a proposition. Furthermore, the element of forfeiture in a statute is as much a penal provision as is the one imposing a penalty.

■ These booklets were shipped by the defendant. The drugs and booklets were sent to the same consignee. They were displayed and were intended to be distributed in relation to the drug. The booklets, pamphlets, or circulars were false and misleading.

From the evidence and proof in the trial of this case, the court finds the defendant Lelord Kordel guilty of violating the misbranding provisions of the Act. As to the defendant, Laura Kordel, the court is of the opinion the evidence is insufficient to support a conviction and she is therefore discharged.