See also 314 F.2d 850.

**UNITED STATES of America,**
**Appellant,**

v.

**VARIOUS ARTICLES OF DRUGS CON-**
**SISTING OF UNKNOWN QUANTI-**
**TIES OF PRESCRIPTION DRUGS.**
Originally Intended for Use as Samples
for Physicians, etc., Stanack Sales Company, Inc., Appellee.

**UNITED STATES of America,**
**Appellant,**

v.

**VARIOUS ARTICLES OF DRUGS CON-**
**SISTING OF UNKNOWN QUANTI-**
**TIES OF PRESCRIPTION DRUGS**
Originally Intended for Use as Samples
for Physicians, etc., Kaybel, Inc., Appellee.

**UNITED STATES of America,**
**Appellant,**

v.

**VARIOUS ARTICLES OF DRUGS CON-**
**SISTING OF UNKNOWN QUANTI-**
**TIES OF PRESCRIPTION DRUGS,**
etc., William B. Mandell, t/a Mandell
Pharmaceuticals, Appellee.

**Nos. 14635, 14636, 14599.**

United States Court of Appeals
Third Circuit.

Argued April 10, 1964.

Decided May 6, 1964.

William W. Goodrich, Asst. Gen. Counsel, U. S. Dept. of Health, Education & Welfare, Washington, D. C. (Herbert J. Miller, Jr., Asst. Atty. Gen., Harold P. Shapiro, Sydney Brodie, Attorneys, Department of Justice, David M. Satz, Jr., U. S. Atty., Arthur A. Dickerman, Michael L. Parker, Attys., Department of Health, Education and Welfare, on the brief), for appellant.

Sidney Slauson, Englewood, N. J., for appellees.

Before KALODNER, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

Each of these three cases is a statutory proceeding in rem, 21 U.S.C. § 334, by the United States for the seizure and condemnation of certain articles of drug,

held for sale after shipment in interstate commerce, on the ground that they are misbranded within the meaning of section 352(a) of title 21 of the United States Code. The articles were duly seized but in each case, on the claimant's motion for summary judgment, it was adjudged that the articles now in dispute were not misbranded and ordered that they be returned to the claimant. On these appeals the United States contends that the judgments below are based upon an erroneously narrow construction of section 352(a).

All of the articles now in controversy are professional samples of prescription drugs in the manufacturers' original packages. Prescription drugs are those which, because of potentially harmful effect, can lawfully be dispensed only upon a physician's prescription. 21 U.S.C. § 353(b)(1). The articles seized are numerous small containers of such drugs, packaged and labeled by the manufacturers in such a way as to indicate that these items are physicians' samples and not intended for sale. Some are explicitly labeled, "Physicians Sample—Not To Be Sold". Other markings, such as "Professional Sample", or "Complimentary Package", or "Patient Starter Package" are less explicit, but it is agreed that all have the same purport. A typical label also gives an accurate and adequate description of the contents of the package and exhibits the manufacturer's name.

The claimants are wholesale sellers who have acquired large numbers of these manufacturer's samples of various prescription drugs with a view to selling them, whether as originally and presently packaged or after repacking, to retail druggists who may wish to purchase such items for filling prescriptions. The United States argues that drugs packaged and labeled as professional samples but held for sale to retail druggists are misbranded within the meaning of the Federal Food, Drug and Cosmetic Act.

The relevant section of the statute states merely that "a drug or device shall be deemed to be misbranded—(a) If its labeling is false or misleading in any particular". 21 U.S.C. § 352(a). In this case the label on each article of drug indicates an intention that it be distributed as a free sample to some physician to be administered by him as he deems proper in his treatment of his patients. In contrast, the claimant has possession of these articles with the intention of selling them to some druggist for resale and dispensing in the course of filling prescriptions. This antithesis between the type and channel of distribution requested by the label and that proposed by the present possessor is sufficient, in the government's view, to make the "labeling false".

To state this position is to disclose its oddity. The only questioned information the label conveys is that the manufacturer proposes that the article be distributed free of charge to physicians for dispensing by them in treating their patients. This request is proper, understandable and in no way misleading. Indeed, the government's purpose in this proceeding is to enforce rather than to modify such distribution as the label solicits. Yet, in its effort to compel compliance with the label's injunction, the government characterizes the labeling as false or misleading. Thus analyzed, the government's position is self-contradictory. More fundamentally, the label cannot violate section 352(a) because it conveys no false or misleading information to anyone.

At the risk of laboring the obvious, we point out that the government's argument here would be far-reaching beyond any arguable contemplation of Congress in subjecting articles of drug to confiscation as "misbranded". Thus, a manufacturer in packaging a drug for retail sale may indicate on the label an intended retail sale price in accordance with some "fair trade" scheme. If a druggist should offer such an item for sale at a lower price, his stock would be subject to confiscation as "misbranded". The same result would follow, regardless of any prohibition, if a druggist should propose to sell drugs without a prescription in a manufacturer's package labeled, "To

be dispensed on prescription only". The conduct involved in these examples, as in the case at hand, may well be wrong. But the wrong is not any misbranding of drugs. Rather, it is the disregard of the directions appearing on an eminently proper label.

In this view of the matter in dispute, it is not necessary to decide whether, as appellees contend and the court below ruled in the Kaybel and Stanack cases, the statutory prohibition of misbranding is limited to statements concerning the nature, composition, proper use or therapeutic value of some drug or device. Certainly, judicial discussion of the meaning of section 352(a) has dealt with statements of that kind only. *E.g.*, Seven Cases of Eckman's Alternative v. United States, 1916, 239 U.S. 510, 36 S.Ct. 190, 60 L.Ed. 411; United States v. Schider, 1918, 246 U.S. 519, 38 S.Ct. 369, 62 L.Ed. 863; Kordel v. United States, 1948, 335 U.S. 345, 69 S.Ct. 106, 93 L.Ed. 52; Drown v. United States, 9th Cir. 1952, 198 F.2d 999. The only case cited by appellants as applying section 352(a) to misrepresentations not of that kind is Irons Inc., v. United States, 1st Cir. 1957, 244 F.2d 34, cert. denied, 354 U.S. 923, 77 S.Ct. 1383, 1 L.Ed.2d 1437. But that case involved no more than a labeling which coupled a false representation of the therapeutic value of a drug as a vitamin and mineral supplement with a false statement that most people need such dietary supplementation. It provides no support for the government's petition here. In any event, we are content to base our affirmance of these judgments upon the circumstance that the challenged labeling is in fact not false and not misleading to anyone. The District Court for the Southern District of New York has reached the same conclusion in a case indistinguishable from these. United States v. Various Articles of Drugs, 1962, 207 F.Supp. 480.

Finally, we observe that in two of these cases the District Court, acting pursuant to 21 U.S.C. § 331(k) and other provisions of law, has restrained the appellees from repacking and relabeling the arti-cles in suit for redistribution in different guise, and in the third case the government can seek such an injunction if such relief seems necessary. Thus, while refusing to justify confiscation of the articles in dispute by distortion of the statutory concept of misbranding, the court below has provided or made available a meaningful and proper safeguard under other applicable provisions of law against the misuse of these articles.

The judgments will be affirmed.