# KORDEL *v.* UNITED STATES.

No. 30.  Argued October 14, 1948.—Decided November 22, 1948.

346

*Arthur D. Herrick* argued the cause and filed a brief for petitioner.

*Solicitor General Perlman* argued the cause for the United States. With him on the brief were *Philip Elman, William W. Goodrich* and *Bernard D. Levinson.*

Opinion of the Court by MR. JUSTICE DOUGLAS, announced by MR. JUSTICE REED.

This case and *United States* v. *Urbuteit, post,* p. 355, decided this day, are here on certiorari to resolve a conflict among the circuits in the construction of the Federal Food, Drug, and Cosmetic Act of June 25, 1938. 52 Stat. 1040, 21 U. S. C. § 301 *et seq.*

Kordel was charged by informations containing twenty counts of introducing or delivering for introduction into interstate commerce misbranded drugs. He was tried without a jury, found guilty, and fined two hundred dollars on each count. 66 F. Supp. 538. This judgment was affirmed on appeal. 164 F. 2d 913.

Kordel writes and lectures on health foods from information derived from studies in public and private libraries. Since 1941 he has been marketing his own health food products, which appear to be compounds of various vitamins, minerals and herbs. The alleged misbranding consists of statements in circulars or pamphlets distributed to consumers by the vendors of the products, relating to their efficacy. The petitioner supplies these pamphlets as well as the products to the vendors. Some of the literature was displayed in stores in which the petitioner's products were on sale. Some of it was given

away with the sale of products; some sold independently of the drugs; and some mailed to customers by the vendors.

It is undisputed that petitioner shipped or caused to be shipped in interstate commerce both the drugs and the literature. Seven of the counts charged that the drugs and literature were shipped in the same cartons. The literature involved in the other counts was shipped separately from the drugs and at different times—both before and after the shipments of the drugs with which they were associated. The question whether the separate shipment of the literature saved the drugs from being misbranded within the meaning of the Act presents the main issue in the case.

Section 301 (a) of the Act prohibits the introduction into interstate commerce of any drug that is adulterated or misbranded.[1] It is misbranded according to § 502 (a) if its "labeling is false or misleading in any particular" and unless the labeling bears "adequate directions for use." § 502 (f). The term labeling is defined in § 201 (m) to

---

[1] Section 301 in relevant part reads as follows:

"The following acts and the causing thereof are hereby prohibited:

"(a) The introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded.

"(b) The adulteration or misbranding of any food, drug, device, or cosmetic in interstate commerce.

"(c) The receipt in interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise.

.        .        .        .        .

"(k) The alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of any other act with respect to, a food, drug, device, or cosmetic, if such act is done while such article is held for sale after shipment in interstate commerce and results in such article being misbranded."

mean "all labels [2] and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." Section 303 makes the violation of any of the provisions of § 301 a crime.[3]

In this case the drugs and the literature had a common origin and a common destination. The literature was used in the sale of the drugs. It explained their uses. Nowhere else was the purchaser advised how to use them. It constituted an essential supplement to the label attached to the package. Thus the products and the literature were interdependent, as the Court of Appeals observed.

It would take an extremely narrow reading of the Act to hold that these drugs were not misbranded. A crimi-

---

[2] The term label is defined as "a display of written, printed, or graphic matter upon the immediate container of any article." § 201 (k).

[3] "Sec. 303. (a) Any person who violates any of the provisions of section 301 shall be guilty of a misdemeanor and shall on conviction thereof be subject to imprisonment for not more than one year, or a fine of not more than $1,000, or both such imprisonment and fine; but if the violation is committed after a conviction of such person under this section has become final such person shall be subject to imprisonment for not more than three years, or a fine of not more than $10,000, or both such imprisonment and fine.

"(b) Notwithstanding the provisions of subsection (a) of this section, in case of a violation of any of the provisions of section 301, with intent to defraud or mislead, the penalty shall be imprisonment for not more than three years, or a fine of not more than $10,000, or both such imprisonment and fine."

The informations, in charging violations of § 301 (a), did not allege that the acts committed were done "with intent to defraud." Hence the maximum penalty was imprisonment for not more than a year, or a fine of not more than $1,000, or both. Prosecution by information was therefore authorized by the statute (see Duke v. United States, 301 U. S. 492) and by Rule 7 (a) of the Federal Rules of Criminal Procedure.

nal law is not to be read expansively to include what is not plainly embraced within the language of the statute (*United States* v. *Resnick,* 299 U. S. 207; *Kraus & Bros.* v. *United States,* 327 U. S. 614, 621–622), since the purpose fairly to apprise men of the boundaries of the prohibited action would then be defeated. *United States* v. *Sullivan,* 332 U. S. 689, 693; *Winters* v. *New York,* 333 U. S. 507. But there is no canon against using common sense in reading a criminal law, so that strained and technical constructions do not defeat its purpose by creating exceptions from or loopholes in it. See *Roschen* v. *Ward,* 279 U. S. 337, 339.

It would, indeed, create an obviously wide loophole to hold that these drugs would be misbranded if the literature had been shipped in the same container but not misbranded if the literature left in the next or in the preceding mail. The high purpose of the Act to protect consumers who under present conditions are largely unable to protect themselves in this field[4] would then be easily defeated. The administrative agency charged with its enforcement[5] has not given the Act any such restricted construction.[6] The textual structure of the Act is not agreeable to it. Accordingly, we conclude that the phrase "accompanying such article" is not restricted to labels that are on or in the article or package that is transported.

The first clause of § 201 (m)—all labels "upon any article or any of its containers or wrappers"—clearly

---

[4] See *United States* v. *Dotterweich,* 320 U. S. 277, 280; *United States* v. *Sullivan, supra,* p. 696.

[5] See § 701 and § 201 (c); 1940 Reorg. Plan No. IV, § 12, 54 Stat. 231, 5 U. S. C. § 133 (u).

[6] The Federal Security Agency by regulation (21 C. F. R. Cum. Supp. § 2.2) has ruled:

"Labeling includes all written, printed, or graphic matter accompanying an article at any time while such article is in interstate commerce or held for sale after shipment or delivery in interstate commerce."

embraces advertising or descriptive matter that goes with the package in which the articles are transported. The second clause—"accompanying such article"—has no specific reference to packages, containers or their contents as did a predecessor statute. See *Seven Cases* v. *United States,* 239 U. S. 510, 513, 515. It plainly includes what is contained within the package whether or not it is "upon" the article or its wrapper or container. But the second clause does not say "accompanying such article in the package or container," and we see no reason for reading the additional words into the text.

One article or thing is accompanied by another when it supplements or explains it, in the manner that a committee report of the Congress accompanies a bill. No physical attachment one to the other is necessary. It is the textual relationship that is significant. The analogy to the present case is obvious. We need not labor the point.

The false and misleading literature in the present case was designed for use in the distribution and sale of the drug, and it was so used. The fact that it went in a different mail was wholly irrelevant whether we judge the transaction by purpose or result. And to say that the prior or subsequent shipment of the literature disproves that it "is" misbranded when introduced into commerce within the meaning of § 301 (a), is to overlook the integrated nature of the transactions established in this case.

Moreover, the fact that some of the booklets carried a selling price is immaterial on the facts shown here. As stated by the Court of Appeals, the booklets and drugs were nonetheless interdependent; they were parts of an integrated distribution program. The Act cannot be circumvented by the easy device of a "sale" of the advertising matter where the advertising performs the function of labeling.

Petitioner points out that in the evolution of the Act the ban on false advertising was eliminated, the control over it being transferred to the Federal Trade Commission. 52 Stat. 114, 15 U. S. C. § 55 (a). We have searched the legislative history in vain, however, to find any indication that Congress had the purpose to eliminate from the Act advertising which performs the function of labeling. Every labeling is in a sense an advertisement. The advertising which we have here performs the same function as it would if it were on the article or on the containers or wrappers. As we have said, physical attachment or contiguity is unnecessary under § 201 (m) (2).

There is a suggestion that the offense in this case falls under § 301 (k) of the Act which includes misbranding of a drug while it is held for sale after shipment in interstate commerce.[7] Since the informations contain no such charge, it is therefore claimed that the judgment must be reversed. We do not agree. Section 301 (k) has a broad sweep, not restricted to those who introduce or deliver for introduction drugs in interstate commerce.[8] See *United States* v. *Sullivan, supra.* Nor is it confined to adulteration or misbranding as is § 301 (a). *Id.* It is, however, restricted to cases where the article is held for sale after shipment in interstate commerce; and, unlike § 301 (a), it does not reach situations where the manufacturer sells directly to the consumer. Cf. *United States* v. *Urbuteit, supra.* Hence we conclude that we do not disturb the statutory scheme when we refuse to take from § 301 (a) what is fairly included in it in order to leave

---

[7] See note 1, *supra.*

[8] The purpose of § 301 (k) was described in H. R. Rep. No. 2139, 75th Cong., 3d Sess. 3 (1938), as follows:

"In order to extend the protection of consumers contemplated by the law to the full extent constitutionally possible, paragraph (k) has been inserted prohibiting the changing of labels so as to misbrand articles held for sale after interstate shipment."

the matter wholly to the service of § 301 (k). The reach of § 301 (a) is in this respect longer. Such a transfer to § 301 (k) would create a new hiatus in the Act and thus disturb the pattern which we discern in it.

We have considered the other objections tendered by petitioner and find them without merit.

*Affirmed.*

MR. JUSTICE BLACK, with whom MR. JUSTICE FRANK-FURTER, MR. JUSTICE MURPHY and MR. JUSTICE JACKSON concur, dissenting.

I agree with the Court's interpretation of § 502 (a) and § 201 (m) of the Federal Food, Drug, and Cosmetic Act. These sections considered together provide a definition for the "misbranding" of drugs. I agree that a drug is misbranded within the meaning of the statute if false and misleading written, printed, or graphic matter is either placed upon the drug, its container or wrappers, or used in the sale of the drug as a supplement to the package label to advise consumers how to use the drug. I agree that false labels may, within the meaning of the statute, "accompany," that is go along with, a drug on its interstate journey even though not in the same carton, on the same train, in the same mail, or delivered for shipment the same day. But these agreements do not settle all the problems in this case.

The Federal Food, Drug, and Cosmetic Act does not purport to make all misbranding of drugs within the foregoing definition a federal offense. Congressional power to pass the Act is based upon the commerce clause. Consequently misbranding is only an offense if the misbranded drugs bear the statutorily defined relationships to interstate commerce. For illustration, if a person misbranded a drug which had not been and was not thereafter introduced into interstate commerce, there would be no

violation of the federal Act, whatever violation there might be of state law.

As we pointed out in *United States* v. *Sullivan,* 332 U. S. 689, the Federal Food, Drug, and Cosmetic Act creates several offenses each of which separately depends upon the relationship the misbranded drug then bears to interstate commerce. Section 301 (a) forbids the "introduction or delivery for introduction into interstate commerce" of misbranded drugs; § 301 (b) forbids misbranding while the drugs are "in interstate commerce"; § 301 (c) prohibits the "receipt" of such drugs in interstate commerce; and § 301 (k) forbids misbranding while drugs are "held for sale after shipment in interstate commerce."

The twenty counts of the information upon which this petitioner's conviction rests, charge that he had introduced drugs into interstate commerce, and that "when" he so introduced the drugs, they were "misbranded . . . in that . . . statements appearing in . . . bulletins and booklets *accompanying*" the drugs "were false and misleading." (Emphasis supplied.) The undisputed evidence as to thirteen of these counts showed that when the drugs were "introduced" into interstate commerce for shipment, they were not within any fair meaning of the word "accompanied" by the printed matter relied on as "labeling." The evidence under one count was that the drugs were shipped July 10, 1942, while the booklets said to be "labels" were sent a year and a half later, January 18, 1944. Thus, each of these counts charged a violation of the separate and distinct offense of introducing misbranded drugs into interstate commerce, prohibited by § 301 (a). The evidence proves the offense, if any, of violation of § 301 (k), which prohibits the misbranding of drugs while held for sale after an interstate shipment.

The Court's interpretation of § 301 (a) seems to me to create a new offense to make it a crime to introduce drugs into interstate commerce if they should subsequently be misbranded, even so long as eighteen months later while held for sale. This judicial action is justified in part on the ground that the offense Congress created in § 301 (k) for holding misbranded drugs for sale after interstate shipment might not reach all situations covered by the congressionally created offense defined by § 301 (a). If as the Court believes, Congress in § 301 (k) has limited the situations for which it will direct punishment for holding misbranded articles for sale, I cannot agree that we should rewrite § 301 (a) so as to broaden its coverage. If Congress left a hiatus, Congress should fill it if it so desires. While I do not doubt the wisdom of separating these offenses as Congress has here done, we must remember that there are dangers in splitting up one and the same transaction into many offenses. See *Blockburger* v. *United States,* 284 U. S. 299, 304–305.

These are serious offenses. While petitioner was fined only $200 on each count, or a total of $4,000, the maximum allowable punishment was $1,000 per count and imprisonment for one year, or for three years under other circumstances. § 303 (a). The approach of Congress in this field of penal regulation has been cautious. The language used by Congress in the present law in defining new offenses has been marked by precision. I think we should exercise a similar caution before reading into the "introduction into interstate commerce" offense, conduct which patently fits into the "held for sale" offense.

I would reverse the judgment here insofar as it rests on the thirteen counts in which the Government charged offenses under § 301 (a) and failed to prove them.