**UNITED STATES v. OMAR, Inc., et al.**
**Crim. No. 49-46.**

United States District Court
D. Nebraska, Omaha Division.
June 5, 1950.

122

John E. Deming, Assistant United States Attorney, Omaha, Neb., for plaintiff.

Edwin Cassem, of the firm of Kennedy, Holland, DeLacy & Svoboda, Omaha, Neb., for defendants.

DONOHOE, Chief Judge.

This prosecution was instituted by the United States against Omar, Incorporated, and Harold Roth, Vice President and General Manager of the Milling Division of said corporation, for alleged violations of the Pure Food and Drug Act, 21 U.S.C.A. § 301 et seq.

It is stipulated by the parties that Omar, Incorporated, on or about October 23, 1944, and March 15 1945, introduced into interstate commerce at Omaha, Nebraska, for delivery to Council Bluffs, Iowa, and consigned to Boedecker System Stores, sundry cartons of farina which were labeled as follows:

OMAR
Vitamin Rich
FARINA

The complaint charges the defendants with misbranding the food within the meaning of 21 U.S.C.A. § 343 (a), which provides that a food shall be deemed to be misbranded if its labeling is false or misleading in any particular. The particular in which the Omar Farina label is said to be misleading is in the statement "vitamin rich", in that said statement "represented and suggested that said food was rich in vitamins, to wit, that said food had been enriched by added vitamins, whereas, in fact and in truth, said food was not rich in vitamins, to wit, said food had not been enriched by added vitamins." The complaint further charges that the food was misbranded within the meaning of 21 U.S.C.A. § 343 (g) (1) in that it purported to be "enriched farina", a food for which a definition and standard of identity has been prescribed by regulation 21 C.F.R., Cum. Supp., 15.140, promulgated pursuant to 21 U.S.C.A. § 341.

It has been stipulated by the parties that the farina in question did not meet the standards set out in the regulation for "enriched farina", but it is contended by counsel for the defendant that the label did not represent the farina to be enriched, but merely rich in its natural state and that therefore the label was not misleading. With this contention we are not in accord.

The legislative history of the present statute plainly shows that its purpose was not confined to a requirement of informative and truthful labeling. Rather, it was the purpose to authorize the Administrator to promulgate definitions and standards of identity under which the integrity

of food products can be effectively maintained, Federal Security Adm'r v. Quaker Oats, 318 U.S. 218, 63 S.Ct. 589, 87 L.Ed. 724, 158 A.L.R. 832. And there is no reason to construe the regulation involved in this case in such a narrow manner as to defeat the purposes of the act merely because this case is a criminal prosecution. The Supreme Court pointed out the pitfalls of such construction in the Kordel case with the following statement: "It would take an extremely narrow reading of the Act to hold that these drugs were not misbranded. A criminal law is not to be read expansively to include what is not plainly embraced within the language of the statute (United States v. Resnick, 299 U.S. 207, 57 S.Ct. 126, 81 L.Ed. 127; Kraus & Bros. v. United States, 327 U.S. 614, 615, 621-622, 66 S.Ct. 705, 707, 708, 90 L.Ed. 894, since the purpose fairly to apprise men of the boundaries of the prohibited action would then be defeated. United States v. Sullivan, 332 U.S. 689, 693, 68 S.Ct. 331, 334 [92 L.Ed. 297]; Winters v. New York, 333 U.S. 507, 68 S.Ct. 665 [92 L.Ed. 840]. But there is no canon against using common sense in reading a criminal law, so that strained and technical constructions do not defeat its purpose by creating exceptions from or loopholes in it. See Roschen v. Ward, 279 U.S. 337, 339, 49 S.Ct. 336, 73 L.Ed. 722." United States v. Kordel, 335 U.S. 345, 69 S.Ct. 106, 109. For a long time courts have followed the doctrine that statutes intended to protect the public health should be given a liberal construction because the public and social purposes served by such legislation greatly exceed the inconvenience and hardship imposed upon the individual. And this is true despite the fact that very often such statutes are primarily penal in nature. See Sutherland, Statutory Construction, Vol. III, Sec. 7202; United States v. Kordel, 7 Cir., 1947, 164 F.2d 913, affirmed 335 U.S. 345, 69 S.Ct. 106.

■ The distinction between "vitamin rich farina" and "enriched farina" is a very thin line to draw if the consumer is to receive any protection by virtue of the regulation. And protection of the consumer is the ultimate purpose of the act. United States v. Sullivan, 332 U.S. 689, 68 S.Ct. 331, 92 L.Ed. 297. That a label "vitamin rich farina" on cartons containing ordinary farina would be misleading to the consumer seems apparent from the Supreme Court's discussion of farina in the Quaker Oats case, supra. The court in upholding the validity of regulation 15.140 made these comments:

"Farina, which is a highly refined wheat product resembling flour but with larger particles is used in macaroni, as a breakfast food, and extensively as a cereal food for children. It is in many cases the only cereal consumed by them during a period of their growth. Both farina and flour are manufactured by grinding the whole wheat and discarding its bran coat and germ. This process removes from the milled product that part of the wheat which is richest in vitamins and minerals, particularly vitamin B1, riboflavin, nicotinic acid and iron, valuable food elements which are often lacking in the diet of low income groups. In their diet, especially in the case of children, there is also frequently a deficiency of calcium and vitamin D, which are elements not present in wheat in significant quantities. * * *

"In recent years millers of wheat have placed on the market flours and farinas which have been enriched by the addition of various vitamins and minerals. The composition of these enriched products varies widely. There was testimony of weight before the Administrator, principally by expert nutritionists, that such products, because of the variety and combination of added ingredients, are widely variable in nutritional value; and that consumers generally lack knowledge of the relative value of such ingredients and combinations of them.

"These witnesses also testified, as did representatives of consumer organizations which had made special studies of the problems of food standardization, that the number, variety and varying combinations of the added ingredients tend to confuse the large number of consumers who desire to purchase vitamin-enriched wheat food products but who lack the knowledge essen-

tial to discriminating purchase of them; that because of this lack of knowledge and discrimination they are subject to exploitation by the sale of foods described as 'enriched', but of whose inferior or unsuitable quality they are not informed. Accordingly a large number of witnesses recommended the adoption of definitions and standard for 'enriched' wheat products which would ensure fairly complete satisfaction of dietary needs, and a somewhat lesser number recommended the disallowance, as optional ingredients in the standards for unenriched wheat products, of individual vitamins and minerals whose addition would suggest to consumers an adequacy for dietary needs not in fact supplied." [318 U.S. 218, 63 S.Ct. 593.]

Thus we note that in the milling process farina loses most of its rich vitamin content and there is little room for the contention that farina in its natural state is "vitamin rich". On the contrary, the administrator found it to be vitamin poor and for this very reason issued the regulation suggested. The only way in which farina can be made rich is by the addition of certain essential vitamins and this is what the Administrator termed "enriched farina", a food for which he established a standard of identity.

With the background of this regulation in mind, it is clear that Omar "vitamin rich farina" is misbranded in that it is misleading because farina is not in fact vitamin rich and because Omar "vitamin rich farina" purports to be a food for which the Administrator has prescribed a standard of identity.

■ The court therefore finds the defendant Omar, Incorporated, guilty of a technical violation of the statute on both counts alleged in the information. Since the evidence shows that the acts complained of in the complaint were done on behalf of the defendant corporation by agents of the corporation other than the defendant Roth, the court finds the defendant Roth not guilty of either count. United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48.

It appears from the evidence that the defendant Omar, Incorporated, had been using the label in question long before the Administrator adopted regulation 15.140; that violation occurred almost automatically upon the adoption of the regulation and prevention of such violation was beyond the defendant corporation's immediate control. Long before this prosecution was commenced, the defendant made every effort to conform to the Administrator's regulation. At a hearing before the Administrator in Kansas City, the president of the defendant corporation by showing made to the Administrator set forth that the defendant did not realize that the terms "vitamin rich" were synonymous with the term "enriched", but agreed to discontinue use of the particular label involved in this prosecution as soon as the present supply on hand was disposed of. Since the Administrator was not satisfied with this, the president of the defendant corporation returned to Omaha and ordered all existing stocks of the questionable carton destroyed. All in all, over 120,000 cartons were destroyed. On May 9, 1945, a local agent of the Administrator came to the company's mill and there found the company's employees cutting and dumping the farina packages. It was not until a year after this incident that any action was taken. On July 6, 1946, this prosecution was commenced.

The court feels that the policies and purposes of the act were properly effectuated when the defendant voluntarily destroyed the illicit containers. It has suffered ample pecuniary damage already and there is no question of its good faith attempt to comply with the act.

The court therefore finds the defendant Omar, Incorporated, guilty as charged in the information. The sentence will be the imposition of a fine of $12.50 on each count, or a total of $25 on both counts, together with the costs of this prosecution.

The defendant Roth is found not guilty and he is therefore discharged and released.