338 F.2d 157
 UNITED STATES of America, Libellant-Appellee,
v.
An undetermined number of cases, each case containing 24 BOTTLES of an article labeled in part: (bottle) "STERLING VINEGAR AND HONEY AGED IN WOOD CIDER BLENDED WITH FINEST HONEY CONTENTS 1 PINT PRODUCT OF STERLING CIDER CO., INC., STERLING, MASS." and an undetermined number of copies of the books entitled "Folk Medicine" and "Arthritis and Folk Medicine," both by D. C. Jarvis, Balanced Foods, Inc., Claimant-Appellant.
 No. 60.
 Docket 28920.
 United States Court of Appeals Second Circuit.
 Argued October 8, 1964.
 Decided November 18, 1964.
 Decided November 18, 1964.
 
 Patricia A. Garfinkel, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty. for the Southern Dist. of New York, and William W. Goodrich, Asst. Gen. Counsel, Food and Drug Div., Dept. of Health, Education and Welfare, Washington, D. C., on the brief), for libellant-appellee.
 Milton A. Bass, New York City (Bass & Friend, New York City, on the brief), for claimant-appellant.
 Before LUMBARD, Chief Judge, and HAYS and ANDERSON, Circuit Judges.
 LUMBARD, Chief Judge.
 
 
 1
 The sole question on this appeal is whether the display and sale of books in the same shop as an article which the books misleadingly recommend as a remedy for various ailments constitutes misbranding in violation of 21 U.S.C. § 331 (a) (1958) because it is misleading written matter accompanying such article.
 
 
 2
 Balanced Foods, Inc., appeals from an order of the District Court for the Southern District of New York condemning a number of bottles of Sterling Vinegar and Honey and a number of copies of two books, "Folk Medicine" and "Arthritis and Folk Medicine." Balanced Foods wholesales health foods and related products. The books and Vinegar and Honey were seized in its warehouse in New York City and condemned as misbranded drugs under § 304 of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 334 (1958), on the ground that the books were "labeling" for the Vinegar and Honey and are misleading.[1] We find that the former conclusion is not supported by the record, and we reverse the judgment of the district court.
 
 
 3
 Vinegar and Honey seems to have been one of the minor ephemera characteristic of the health and diet food trade. That it gained shelf space among boxes of sunflower seed, wheat germ and healing grasses can be attributed to the wide reading of Dr. D. C. Jarvis' first book, "Folk Medicine," subtitled "A Vermont Doctor's Guide to Good Health." Its publisher, Henry Holt & Company, sold nearly half a million copies of the book, and a considerable number of its readers at least sampled from Dr. Jarvis' pharmacopoeia.
 
 
 4
 Prominent among Dr. Jarvis' remedies is a mixture of cider vinegar and honey, which is prescribed for a wide variety of maladies. Inevitably some people found it burdensome to mix the vinegar with the honey, and, true to the traditions of free enterprise, several companies responded by producing a pre-mixed product. Among them was Sterling.
 
 
 5
 "Folk Medicine" and its sequel, "Arthritis and Folk Medicine," mention Sterling cider vinegar by name as suitable for medicinal use, and the two books certainly have promoted the sale of Sterling's Honey and Vinegar. In addition, Balanced Foods stocked both and sold both to a number of retailers. The question is whether the sum of these relationships constitutes labeling. We do not think that it does.
 
 
 6
 The Vingear and Honey bottles bear a label, which claims no more than that they contain one pint of "aged in wood cider vinegar blended with finest honey." The labeling subject to the Act is not limited to this common form of label, however; it includes not only the written matter "upon any article or any of its containers or wrappers," but also written matter "accompanying such article." 21 U.S.C. § 321(m). On the other hand, labeling does not include every writing which bears some relation to the product. There is a line to be drawn, and, if the statutory purpose is to be served, it must be drawn in terms of the function served by the writing.
 
 
 7
 This is the teaching of Kordel v. United States, 335 U.S. 345, 69 S.Ct. 106, 93 L.Ed. 52 (1948), in which the defendant had mailed drugs and explanatory pamphlets to his retailers in separate packages. In affirming his conviction the Court held that physical attachment is not necessary where the writing "performs the same function as it would if it were on the article or on the containers or wrappers." Id. at 351, 69 S.Ct. at 110. But this "same function" is not merely to promote the sale of the food or drug. Advertising and labeling overlap; most labels advertise as well. They are not identical, however, and material which serves only as an advertisement is not covered by the Act. Cf. id.
 
 
 8
 The distinguishing characteristic of a label is that, in some manner or another, it is presented to the customer in immediate connection with his view and his purchase of the product. Such a connection existed at both wholesale and retail levels in Kordel: Although the pamphlets and drugs were mailed to retailers separately, they were mailed in "integrated transactions"; the vendors in turn gave the pamphlets away with the sale of the drugs in some cases.
 
 
 9
 We need not consider whether or under what circumstances integrated use of written material and a drug product by a retailer would by itself allow condemnation of the goods in the hands of the wholesaler, for there is no evidence of such use of "Folk Medicine" or "Arthritis and Folk Medicine" with Vinegar and Honey at either level. Balanced Foods sold both, and the government presented some evidence that it took special steps to promote "Folk Medicine." There was no evidence of any joint promotion of either book with Vinegar and Honey, however. It perhaps could be inferred that the officers of Balanced Foods realized that sale of the books would tend to promote sale of Vinegar and Honey. But there can be no inference that it sold the books for that purpose. It first ordered "Folk Medicine" almost two years before it began carrying Vinegar and Honey; it sold over 7,000 copies of "Folk Medicine" at $2.00 each wholesale and fewer than 2,000 pint bottles of Vinegar and Honey.[2] There was, in sum, no basis for finding that Balanced Foods did more than carry two related products.
 
 
 10
 At the retail level, there was conflicting evidence as to the number of other books carried by the retailers who purchased "Folk Medicine" from Balanced Foods and as to the relative position of the books and the Vinegar and Honey bottles in the retail shops. Taking the evidence most favorable to the government, however, it still shows that those retailers also carried a number of other books and that "Folk Medicine" and "Arthritis and Folk Medicine" were shelved with the other books. Nor was there any evidence of displays featuring both Vinegar and Honey and the books, and the five-foot distance between the books and the bottles in one shop supplies little basis for inference when the entire store was estimated by the government's witness to be only 20 by 25 feet.
 
 
 11
 "Folk Medicine" was a best-selling book which Balanced Foods and health food shops could be expected to carry without regard to Vinegar and Honey, as they did prior to introduction of the latter product. The book made broad claims for a vinegar and honey mixture, which led ultimately to Sterling's marketing Vinegar and Honey. It is not disputed that these claims were misleading, but the Federal Food, Drug and Cosmetic Act was not intended to deal generally with misleading claims; much more general proscriptions may be found in §§ 12-15 of the Federal Trade Commission Act, 15 U.S.C. §§ 52-55 (1958). In our view, the Food and Drug Act was intended to deal with such claims only when made in immediate connection with sale of the product. This was not the use to which "Folk Medicine" and "Arthritis and Folk Medicine" were put by Balanced Foods or its retailers.
 
 
 12
 The judgment of the district court is reversed.
 
 
 
 Notes:
 
 
 [1]
 Section 304(a) of the Act provides that misbranded or adulterated food, drugs and cosmetics may be condemned in anin rem action in the district court for the district in which the goods are found. Under § 502(a) of the Act, 21 U.S.C. § 352(a) (1958), a drug is deemed misbranded "[i]f its labeling is false or misleading."
 
 
 [2]
 We were advised upon argument that bottles of Vinegar and Honey sold at $4.50 per dozen wholesale or about 38¢ each