**CHURCH OF SCIENTOLOGY OF MIN-NESOTA et al., Plaintiffs,**

**v.**

**DEPARTMENT OF HEALTH, EDUCA-TION AND WELFARE et al.,
Defendants.**

**No. 4–69 Civ. 86.**

United States District Court,
D. Minnesota,
Fourth Division.

July 20, 1971.

Craig W. Gagnon, of Oppenheimer, Hodgson, Brown, Wolff & Leach, St. Paul, Minn., for plaintiffs.

Robert G. Renner, U. S. Atty., and Peter J. Thompson, Asst. U. S. Atty., Minneapolis, Minn., for defendants.

## ORDER

NORDBYE, District Judge.

The defendants have moved for reconsideration of the Court's order of June 11, 1969, denying their motion to dismiss the complaint herein and for summary judgment in their behalf. Subsequent to the order denying defendants' motion, there were filed with this Court excerpts of published material issued by the Church of Scientology, one of the plaintiffs herein, and its founder, L. Ron Hubbard, upon which the Government has renewed its motion for summary judgment. These excerpts from literature put forth by the plaintiffs were obtained by the inspectors of the Food and Drug Administration at the Church of Scientology bookstore located at 3007 Nicollet Avenue, Minneapolis, or received through the mail directly from the said bookstore. The only exception, according to the affidavit of Robert W. Marrs, is exhibit numbered 176, which apparently was mailed directly to an inspector in Minnesota, from Copenhagen, Denmark, where Mr. Hubbard, for a

time at least, carried on some of his activities. It is upon the basis of the literature distributed by these plaintiffs or L. Ron Hubbard and the decision of the Court of Appeals of the Ninth Circuit in Church of Scientology of California v. Richardson, 437 F.2d 214, dated January 11, 1971, which constitute, in part, the basis for the defendants' renewal of their motion for summary judgment. The California case sustained the Government's refusal of admission of certain E–meters allegedly manufactured in the United Kingdom to be used for auditing purposes by the Church of Scientology in California. The Court of Appeals observed as to the District Court's finding, p. 218,

> "In determining the E–meter's *intended* use, the court could validly consider the appellant's publications that discuss the device's applications. * * * Unlike the 'mislabeling' section involved in Founding Church, the court here could determine the E–meter's intended use without evaluating the truth or falsity of any related 'religious' claims. To the contrary, appellant's claims in its literature regarding the applications of the device in the practice of religion were presumed to be true for the purpose of determining its intended use. We find no infringement of First Amendment rights."

In addition, the court made this observation, p. 216,

> " * * * The E–meter is manufactured in the United Kingdom and is, in fact, a simple skin galvanometer that crudely measures changes in electrical resistance in the human body."

It may be noted that the galvanometers in question in this proceeding were manufactured in the United Kingdom and imported into the United States, but E–meters are now manufactured in this country and apparently are available to the adherents of the Church of Scientology. An examination of the literature distributed by these plaintiffs in connection with the teachings of Dianetics and the Church of Scientology discloses that it sets forth numerous statements contradictory to the labels affixed to the E–meters, to wit, "Not intended or effective for the diagnosis, treatment or prevention of any disease."

It appears from the showing here that L. Ron Hubbard, at one time at least, maintained his headquarters in England, and according to the recital of facts in Founding Church of Scientology v. United States, 133 U.S.App.D.C. 229, 409 F. 2d 1146, he first developed certain teachings in the early 1950's which he called "Dianetics". These teachings are significant in this case since many of the therapeutic techniques in Dianetics are now found in the teachings of the Church of Scientology. In the *Founding Church* case the court stated, p. 1151,

> "The basic theory of Dianetics is that man possesses both a reactive mind and an analytic mind. The analytic mind is a superior computer, incapable of error, to which can be attributed none of the human misjudgments which create social problems and much individual suffering. These are traceable rather to the reactive mind, which is made up of 'engrams,' or patterns imprinted on the nervous system in moments of pain, stress or unconsciousness. These imprinted patterns may be triggered by stimuli associated with the original imprinting, and may then produce unconscious or conditioned behavior which is harmful or irrational.

> "Dianetics is not presented as a simple description of the mind, but as a practical science which can cure many of the ills of man. It terms the ordinary person, encumbered by the 'engrams' of his reactive mind, as a 'preclear,' by analogy to a computer from which previously programmed instructions have not been erased. The goal of Dianetics is to make persons 'clear,' thus freeing the rational and infallible analytical mind. The benefits this will bring are set out in considerable and alluring detail. All mental disorders are said to be caused by 'en-

grams,' as are all psychosomatic disorders, and that concept is broadly defined. [Dianetics: The Modern Science of Mental Health, Hubbard].

"A process of working toward 'clear' is described as 'auditing.' This process was explicitly characterized as 'therapy' in Hubbard's best-selling book Dianetics: The Modern Science of Mental Health (1950). The process involves conversation with an 'auditor' who would lead the subject or 'preclear' along his 'time track,' * discovering and exposing 'engrams' along the way. Though auditing is represented primarily as a method of improving the spiritual condition of man, rather explicit benefits to bodily health are promised as well. Hubbard has asserted that arthritis, dermatitis, asthma, some coronary difficulties, eye trouble, bursitis, ulcers and sinusitis are psychosomatic and can be cured, and further that tuberculosis is 'perpetuated by engrams.'

"A few years after the appearance of Dianetics, Hubbard began to set forth the broader theories of Scientology. Dianetics was explicitly endorsed as part of Scientology, 'that branch * * * that covers Mental Anatomy.' "

The relationship of Dianetics to Scientology and the use of the E–meter in each is repeatedly emphasized in the literature and advertising sent out by Hubbard through the local Church of Scientology. One of plaintiffs' exhibits herein noted as Exhibit 128 reads in part as follows:

#### "GET E–METER TRAINING

"Every level of training in Scientology from the Dianetic Auditor's Course to the Academy Levels O, I, II, III, IV, and the Saint Hill Special Briefing Course (Class VI) gives definite, expanded steps of E–Meter auditing technology. Excellent understanding and handling of the E–Meter

is thus easily acquired on an exact gradient.

"Contact your nearest Hubbard Scientology Organization to begin your first or next step in training in standard Scientology auditor technology.

"A student on all courses from the Dianetic Auditor's Course upward must own a Mark V E–Meter."

On Page 14 of Exhibit 131, in discussing "auditing" generally appears the following:

"Paralysis, anxiety, stomachs, arthritis and many ills and aberrations have been relieved by auditing them. An E–Meter shows them up and makes them confess their misdeeds."

In Exhibit 132, the E–Meter essentials are listed beginning with the sentence:

"There is no known way to clear anyone without using a meter."

In Exhibit 156, the following appears in an advertisement pamphlet obtained from the local Church of Scientology bookstore, which reads:

#### "ORDER YOUR E–METER TODAY!

"You need an E–Meter on every Dianetic or Scientology Course.

    *     *     *     *     *     *

" * * * the Mark V E–meter accurately measures the mental state and changes in state of homo sapiens."

Exhibit 162, headed "GET PROCESSED," contains the following:

"DIANETIC PROCESSING—Become a happy, well human being. Dianetic processing (pastoral Counseling) is The Mental Technology which handles psychosomatic ills. If you have emotional problems or psychosomatic ills, GET DIANETIC AUDITING. 5 hour Intensive—$175 25 hour Intensive—$725.00"

Exhibit 170, a pamphlet sent through the mails from the local Church of Scientology in 1970, outlines the services

---

\* In Exhibit 126, "time track" is defined as "The span of the individual from conception to present time on which lies the sequence of events of his life."

available in Dianetics training in Minneapolis, and then lists a few of the uses of auditing as follows:

"To increase IQ

"To help cure any body problem that is not purely physical in nature or cause such as helping mothers give easier birth and faster recovery after birth

"To speed recovery and healing after operations and accidents

\*   \*   \*   \*   \*   \*

"Almost any human situation containing pain and misemotion should be handled by auditing. Auditing is the answer to human disability and travail. It can make life worth living. Auditing is not a limited action. There is no limit to what good auditing can do."

In L. Ron Hubbard's pamphlet issued in 1970 called "The Auditor," Exhibit 176, he discusses the effect of his book called "Standard Dianetics" issued in the middle of 1969, and he commented upon its wide success compared to Scientology as follows:

"You see there have always been, since 1950, these TWO subjects—Dianetics and Scientology.

"DIANETICS addressed the body, the direct effect of thought on the body.

"SCIENTOLOGY addressed the world of thought, of life itself."

\*   \*   \*   \*   \*   \*

"Anyway, Dianetics is what you use to handle material matters. Scientology is used to handle thought, ability, further awareness.

\*   \*   \*   \*   \*   \*

"People who are medically ill, we send to the medical doctor. People who are physically ill from pscho-somatic causes are processed on Dianetics.

"Those who are not medically ill or psycho-somatically ill can be entered directly into Scientology grades and *should be.*

"Dianetics has many uses—accidents, injuries heal much more quickly —chronic illness ends when so assisted. Drug addition or drug troubles can be erased.

"The road out, of course, is Scientology.

"But a preclear can be audited on either Dianetics or Scientology at any stage of his auditing.

"Scientology is said to be easier to confront for most preclears at first."

It is to be gathered from other literature distributed by the Church of Scientology that in order to be efficient in auditing in Scientology, one should first become efficient in Dianetics. Reference may be made to Exhibit 121, which is an advertising sheet issued by Hubbard in 1969, which reads, in part,

## "SEND FOR YOUR MARK V E–METER TODAY

"You need a Hubbard Mark V E–Meter (Electrometer) on the Hubbard Dianetic Auditor's Course and on every Scientology Course from the Hubbard Recognized Scientologist Course onwards.

"YOU NEED AN E–METER on your Road to Total Freedom.

"Precision built to Ron's exact specifications, the Mark V E–Meter accurately indicates mental states and changes in these states. It is *indispensable* to your progress in Scientology."

As stated in the case of Church of Scientology of California, 437 F.2d p. 216,

"The 'Hubbard E–meter' is an instrument that is allegedly essential in the practice of Scientology. The E–meter is manufactured in the United Kingdom \* \* \* . The Food and Drug Administration refused to allow the importation of the E–meters because they were deemed to be 'devices' (21 U.S.C. § 321(h)) that ap-

peared to be 'misbranded' in that they did not bear adequate instructions for use (21 U.S.C. § 352(f) (1))."

In the California case, p. 217, the District Court held that the E–meter was a "device" within Section 321(h) because it is intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man, and further held that Section 381(a) requires only that the device appears to be misbranded and vests such determination in the discretion of the Secretary of Health, Education and Welfare. Moreover, the court held that the "Secretary's determination of misbranding is *not* subject to judicial alteration unless it was arbitrary and capricious." And, as here, the court noted that there were no allegations in the complaint that the Secretary's determination of misbranding was arbitrary or capricious and held that the real issue tendered by the complaint was a claimed violation of civil rights, to wit, religious freedom.

The plaintiffs assert that the only use of the E–meter is in connection with the religious ceremony called "auditing" and that the Church of Scientology in its religious ceremony does not in any way relate to the alleviation of any disease or ailment, mental or physical, but that the E–meter is used in a religious rite similar to the orthodox confession which is formalized in some of the churches which adhere to many religious creeds. Although the E–meter is used in auditing in Dianetics, it seems clear that the literature distributed by the Church teaches primarily that higher skill and longer experience are demanded in successfully auditing a person with the E–meter in the Church of Scientology. Moreover, it seems reasonably clear upon the entire showing herein that the principal purpose of auditing in the Church with the E–meter is to delve more effectively into the mental and physical stresses of the individual audited, resulting in the person audited ultimately becoming a "clear" and thus free from any pschosomatic or similar ailments of the human body.

In commenting upon the purposes of Scientology and the progress being made in its various fields of activity, Mr. Hubbard distributed many circulars. That inconsistencies and seeming contradictions appear in the field of Dianetics and the purposes of Scientology is evident. In Exhibit 114, he refers to the five levels of Scientology. As to Scientology No. 2, that is, the second level, he states:

"Academy HPA/HCA accomplishment level. Scientology for use in spiritual healing. This is a healing strata, using the wealth of past processes which produced results on various illnesses. I am shortly sending out questionaires to get all Healing process results as a research project. The auditing level is Reach and Withdraw and Repetitive Processes. The target is human illness. We have never entered this field but as we are not thanked for staying out of it, we might as well dominate it. It is a good procurement area."

Granted that the claims for Dianetics in the cure and alleviation of disease and various ailments with the aid of the E–meter are emphasized more frequently in literature distributed by these plaintiffs than that which is circulated in the field of Scientology. It may be argued that the Church with the use of the E–meter in Scientology assumes to enter the field of psychiatry and psychology with the limited claim of the mental improvement of the person audited. However, it is unmistakably clear from the record that with the E–meter the Church of Scientology contends that one of the primary purposes of auditing in the Church is to improve the health of the person audited. For instance, in Exhibit 118, in commenting upon Scientology in the chapter entitled "Science Processing," appears the following:

"Scientology, used by the trained and untrained person, improves the health, intelligence, ability, behavior, skill and appearance of people.

\*　　\*　　\*　　\*　　\*　　\*

"It is employed by an AUDITOR (a Scientology practitioner) upon individuals or small or large groups of people in their presence. The Auditor makes these people, at their choice, do various exercises, and these exercises (processes) bring about changes for the better in intelligence, behaviour and general competence."

■ This Court in passing upon defendants' motion does not assume to find or determine the actual effects of the use of the E–meter in auditing in the ceremony of the Church. That is, the question of the truth or the falsity of the claims made by the Church in the process of auditing in the Church of Scientology is not herein determined and is not before the Court for determination. The Court merely finds that the E–meter as used in the auditing ceremony is an instrument which is used by the Church for certain diagnostic and therapeutic purposes in improving the health of the person audited, usually after Dianetic auditing, and therefore the machine and the use thereof come within the scope of Section 352(f) (1), 21 U.S.C., and finds that the machines transported from the United Kingdom to this country and seized by the defendants do not bear adequate instructions for their use.

■■ It is to no purpose to urge, as plaintiffs do, that other religious sects in their practices make certain therapeutic claims for the use of certain medals, artifacts, symbols, waters, etc., in the alleviation and even cure of certain human ailments, and therefore because these religious sects are in no way molested by the Government in these teachings and the results thereof, the Church of Scientology should be accorded the same religious freedom. Whether or not other religious institutions violate the Food and Drug Act is immaterial in this proceeding. A religious institution is not immune from the provisions of the Food and Drug Act. This fact is recognized in the *Founding Church* case where the court observed that the exercise of religious freedom does not include the freedom to violate the Federal Act now under consideration. The literature adopted by the plaintiffs contains an abundance of claims of diagnostic and therapeutic values, particularly in the neurotic and psychotic field in the use of the E–meter in auditing in the Church of Scientology, and admittedly there are no instructions for the use of this machine by way of any labeling thereof. As stated before, this Court does not assume to find whether or not the auditing claims are true or false.

Moreover, this Court agrees with the statement of the Ninth Court of Appeals in its California decision of January 11, 1971, wherein it held in considering a similar state of facts in connection with the use of the E–meters by the Church of Scientology of California that the E–meter should not be held harmless and thus exempt under Section 352(f), 21 U.S.C., which reads, in part,

"Provided, That where any requirement of clause (1) of this subsection as applied to any drug or device, is not necessary for the protection of the public health, the Secretary shall promulgate regulations exempting such drug or device from such requirement."

In that connection, the California court referred to Drown v. United States, 198 F.2d 999, 1006, where the court stated,

" * * * While the instruments may be harmless in themselves, their danger lies in the possibility that 'ignorant and gullible persons are likely to rely upon them instead of seeking professional advice for conditions they are represented to relieve or prevent.' " (Citing United States v. Kordel, 7 Cir., 1948, 164 F.2d 913, 916, affirmed 335 U.S. 345, 69 S.Ct. 106, 93 L.Ed. 52.

■ That there is an absence of any instructions for the use of these machines by way of any labeling is not contradicted. True, there are disclaiming labels on the machines, but such an inscription cannot be considered a labeling

of E–meters in conformity with the banding requirements of Section 352(f)(1), 21 U.S.C., in light of the showing made here as to the numerous therapeutic uses made of these machines by these plaintiffs in auditing in the Church of Scientology.

The Court has not assumed to rest this decision solely upon the contention of the defendants that the Court should grant summary judgment in their behalf because plaintiffs are in privity with the Church of Scientology of California v. Richardson. But clearly the holding in the California case is strong authority in support of the analysis and the conclusions therefrom which this Court has made of the various church publications as to the therapeutic uses of the E–meter in the auditing ceremony in the Church of Scientology.

It follows from the foregoing that defendants' motion for summary judgment must be granted, and judgment in their behalf may be entered dismissing the complaint herein. It is so ordered. Exceptions are allowed.