The **NEW YORK STATE PESTICIDE COALITION, INC., the Professional Lawn Care Association of America, the Pesticide Public Policy Foundation, Inc., the National Pest Control Association, the National Arborist Association, Elizabeth Seme and Walter Schroeder, Plaintiffs–Appellants,**

v.

Thomas **JORLING, as Commissioner of the New York State Department of Environmental Conservation, Defendant–Appellee.**

No. 1006, Docket 89–7143.

United States Court of Appeals, Second Circuit.

Argued April 6, 1989.

Decided May 10, 1989.

Thomas S. West, Albany, N.Y. (Ruth E. Leistensnider, Nixon, Hargrave, Devans & Doyle, Albany, N.Y., of counsel), for plaintiffs-appellants.

Martha McCabe, Asst. Atty. Gen. State of N.Y., Albany, N.Y. (Robert Abrams, Atty. Gen., Peter H. Schiff, Deputy Sol. Gen., Val E. Washington, Joan Leary Matthews, Asst. Attys. Gen., Albany, N.Y., of counsel), for defendant-appellee.

Before KAUFMAN, PRATT, and MINER, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

During the last two decades, America has recognized the imminent threat to the environment presented by continued pollution of our natural resources. Effective regulation of hazardous chemicals, including pesticides, has emerged as basic to our national environmental policy. Increasingly, many state governments have also taken up the cause. New York is the first state to enact a comprehensive Pesticide Notification Program and as such has become the target of various pesticide trade representatives from across the nation who assert that the new provisions conflict with federal law.

We are urged to conclude that the New York law, designed to assure public awareness that poisonous chemicals are being utilized, is preempted by the Federal Insecticide, Fungicide & Rodenticide Act (FIFRA). Because the program constitutes lawful state regulation of the sale and use of pesticides, rather than impermissible "labeling," we hold that it is not.

The facts are not in dispute. Recently, the New York legislature added Title 10, "Special Requirements for Commercial Lawn Applications," to Article 33 of the New York Environmental Conservation Law (ECL). *See* ECL § 33–1001 *et seq.* Title 10, and regulations promulgated by appellee, New York Department of Environmental Conservation, to implement it, set forth various notification requirements intended to alert the public to the impending use of poisonous chemicals and to disseminate information to those who may be exposed. *See* 6 N.Y.Comp.Codes R. & Regs. tit. 6 § 325 (1987) ("NYCRR").

Specifically, the New York regulations demand that all commercial pesticide applicators follow several steps. They must enter into a written contract with the owner of the premises where extermination is to occur, ECL § 33–1001(1), and provide a list of the chemicals to be applied along with any warnings which appear on the pesticide's Environmental Protection Agency (EPA) approved label, *id.* Moreover, they are required to give the prospective purchaser a notification "cover sheet" which provides further warnings and safety information, NYCRR tit. 6 § 325. In addition, signs must be posted on the perimeter of the affected property, instructing persons not to enter the area for a 24 hour period, ECL § 33–1003. And, in some instances, vendors must notify the public in

newspapers of prospective use over large tracts. NYCRR tit. 6 § 325.

Appellants New York State Pesticide Coalition *et al.* ("Pesticide Applicators") are lobbyists for those involved in the business of selling and using pesticides.[1] They argue that Title 10 and § 325 are facially preempted by § 24(b) of FIFRA, and contend that irreparable injury will result from the cost of both compliance and potential liability under the new law. Moreover, they are concerned that other states will create notification schemes similar to New York's.

FIFRA placed the "labeling" of pesticides within the singular province of the EPA. *See* FIFRA § 24(b), 7 U.S.C. § 136v(b). However, it expressly permitted states to impose regulations on the "sale and use" of these substances in addition to federal statutory requirements, so long as there was no conflict. FIFRA § 24(a), 7 U.S.C. § 136v(a).

On cross-motions for summary judgment, the parties agreed that there were no disputed issues of material fact. Judge McCurn granted appellee's motion, holding that the new legislation was not "labeling," but rather a permissible sale and use regulation and thus not preempted by FIFRA. 704 F.Supp. 26. We agree.

Control of the use of pesticides and other poisonous chemicals has long been a national policy. The first federal statute regulating this area was intended to protect farmers from misbranded or adulterated insecticides or fungicides. *See* Federal Insecticide Act of 1910 (Act of April 26, 1910, ch. 191, 36 Stat. 331, repealed 61 Stat. 163,

172 (1947)). Later, Congress passed FIFRA, a broader statute intended to "protect man and his environment" from the deleterious effects of such chemicals. S.Rep. No. 92–838, 92d Cong., 2d Sess. 1 (1972), *reprinted in* U.S.Code Cong. & Admin.News 1972, p. 3993.

As first enacted, FIFRA was "primarily a licensing and labeling statute." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 991, 104 S.Ct. 2862, 2866, 81 L.Ed.2d 815 (1984). By the early 1970s, mounting public anxiety over the effect on the environment of the use of these poisons led Congress to revise FIFRA through the adoption of the Federal Environmental Pesticide Control Act of 1972, P.L. 92–516, 86 Stat. 973 (FEPCA). FIFRA was transformed from primarily a labeling law into a comprehensive scheme to regulate the use, sale and labeling, of pesticides-partly through EPA registration of the substances, including review, suspension and cancellation of registration. *See* H.R.Rep. No. 92–511, at 1; *Monsanto*, 467 U.S. at 991–92, 104 S.Ct. at 2866–67.

At the time of these developments, the states evolved their own regulatory framework.[2] The 1972 Amendments to FIFRA explicitly preserved the right of the states to delineate the proper use of such products within their own borders in § 24(a): "A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter." 7 U.S. C. § 136v(a). States were, however, proscribed from regulating the labeling of pesticides: "Such State shall not impose or

**1.** New York State Pesticide Coalition, Inc. is a not-for-profit corporation composed of businesses and individuals engaged in the manufacture, sale, distribution and application of pesticides in New York. The Professional Lawn Care Association of America is a national association, Georgia-based, of corporations that deal with the care of lawns, including pesticide application. Pesticide Public Policy Foundation, Inc., of Rhode Island, operates a national alliance "to provide leadership in the formation of reasonable public policy at the federal and state levels." The National Pest Control Association, based in Virginia, is a national association of structural, general, household, industrial and institutional pest control companies. National

Arborists Association is a national association, with its principal place of business in New Hampshire, involved with the horticultural and agricultural use of pesticides. Elizabeth Seme is Executive Director of the New York State Green Council, a New York unincorporated association of horticultural and agricultural pesticide applicators. Walter Schroeder is an individual pesticide applicator in New York.

**2.** New York State regulates the use of pesticides within its borders pursuant to its inherent police powers to protect public health and the environment. *See* N.Y. Const. Art. 17, § 3, ECL § 33–0301.

continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." 7 U.S.C. § 136v(b). The states have joint control with the federal government in regulating the use of pesticides, for the safety of its citizens and their environment, *see also* H.R.Rep. No. 92–571, 92nd Cong., 1st. Sess. at 1 (1971), with the exception of the EPA's exclusive supervision of labeling.

The federal preemption doctrine is a basic principle of our legal system. The Supremacy Clause of the Constitution provides that the law of the United States "shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. In determining whether a state statute is preempted by federal law, and thus invalid under the Supremacy Clause, our task is to ascertain the intent of Congress. *See Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 95, 103 S.Ct. 2890, 2898, 77 L.Ed.2d 490 (1983).

Congress may supercede state law in three ways. A federal statute may expressly state that it displaces state law. *E.g., Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). The principal claim advanced by appellants is whether Congress's express preemption of "labeling" reaches the activities regulated by New York's statute.

Alternatively, congressional intent to occupy the field may be inferred where a scheme of federal regulation is sufficiently comprehensive to "leave no room" for supplementary state regulation. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). But this rationale is not pertinent in this case since Congress explicitly preserved the states' right to regulate the "sale and use" of pesticides while reserving "labeling" to federal control. *See* FIFRA § 24(a), 7 U.S.C. § 136v(a).

But, where Congress and the states occupy the same field, federal law will preempt state law to the extent the two actually conflict. *California Federal Savings and Loan Ass'n v. Guerra*, 479 U.S. 272, 281, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987). Such a clash does not occur unless "compli-ance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), or the state law stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

With this discussion of the pertinent law, we approach the present controversy. The meaning of the word "labeling" as used in the statute is decisive. Appellants argue that the New York notification requirements constitute "labeling" within the meaning of that term as set forth in FIFRA and are therefore preempted by § 24(b). Judge McCurn first concluded that the requirements of the ECL were not "labeling" within the meaning of the federal statute, and then considered whether compliance with the ECL and its regulations and FIFRA is a "physical impossibility" or if the New York laws impede "the full purposes and objectives of Congress" in enacting FIFRA. He found no conflict.

The task of statutory construction begins with the language of the statute. *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985). Where the meaning is clear, " 'the sole function of the courts is to enforce it according to its terms.' " *United States v. Ron Pair Enterprises, Inc.,* —— U.S. ——, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)).

FIFRA defines "label" and "labeling" as follows:

(1) Label.—The term "label" means the written, printed, or graphic matter on, or attached to, the pesticide or device or any of its containers or wrappers.

(2) Labeling.—The term "labeling" means all labels and all other written, printed, or graphic matter—

(A) *accompanying the pesticide or device at any time;* or

(B) to which reference is made on the label or in literature accompanying the pesticide or device....

FIFRA § 2(p), 7 U.S.C. § 136(p) (emphasis added).

The appellants claim that New York's notification provisions constitute "labeling" since those provisions require additional "written, printed, or graphic matter" which "accompan[ies] the pesticide or device at any time." [3] Because the notification materials are present in some spatial and temporal proximity to the applied pesticide, it is asserted they "accompany" it. But this definition is rather strained. "Labeling" is better understood by its relationship, rather than its proximity, to the product.

Clearly, since the key function of the scheme is to identify and describe the poisonous chemicals, statutory "labeling" may include a warning. But this does not bar all other similar statements. FIFRA "labeling" is designed to be read and followed by the end user. Generally, it is conceived as being attached to the immediate container of the product in such a way that it can be expected to remain affixed during the period of use. *See* EPA Labeling Requirements for Pesticides and Devices, 40 C.F.R. § 156.10(a)(4) (July 1, 1988).

By contrast, the target audience of the New York notification program is those innocent members of the general public who may unwittingly happen upon an area where strong poisons are present as well as those who contract to have pesticides applied. The mere proximity of the warning, for example, notices posted around an enclosed field or copies of the EPA's labeling information provided to the contracting parties, does not transform the admonition into "labeling" within the meaning of FIFRA § 2(p).

To support their construction of the statute, appellants principally rely upon *Kordel v. United States*, 335 U.S. 345, 348, 69 S.Ct. 106, 108, 93 L.Ed. 52 (1948), and *United States v. Diapulse Mfg. Corp.*, 389 F.2d 612 (2d Cir.), *cert. denied*, 392 U.S. 907, 88 S.Ct. 2059, 20 L.Ed.2d 1365 (1968). In *Kordel,* literature provided by a drug manufacturer constituted labeling under the Federal Food, Drug and Cosmetic Act because the material advised how end purchasers were to use the drugs. 335 U.S. at 348, 69 S.Ct. at 108. Similarly, the *Diapulse* case involved a medical device whose instruction booklet included false claims of effectiveness against specific diseases. 389 F.2d at 614. The written matter in these cases was aimed at users of the product, not the general public. The New York regulations, on the other hand, essentially ensure minimum warnings to the public at large and a greater degree of disclosure to those contracting to have pesticides applied. We discern no conflict between them and § 24(b).

Identifying congressional purpose is the "ultimate touchstone" of a preemption inquiry. *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978). In enacting § 24(b), Congress clearly sought to set minimum standards for pesticide labeling, *see Cox v. Velsicol Chemical Corp.*, 704 F.Supp. 85, 86–87 (E.D.Pa.1989), not to prevent states from regulating the "sale and use" of the poisonous chemical substances through mandatory written, printed, or graphic materials revealing the ingredients.

Judge McCurn properly noted that FIFRA's prohibition of state labeling "in addition to or different from" that approved by the EPA has as "its main focus ... preserving the force of the information contained in the FIFRA label." Notification requirements such as cover sheets, signs, and newspaper advertisements do not impair the integrity of the FIFRA label. Rather, they serve to further the purpose of the statute by enlisting state aid to prevent "unreasonable adverse effects [of pesticide use] on the environment." 7 U.S.C. § 136a(c)(5).

To hold otherwise would preempt a wide range of state activities which Congress did not subject to the jurisdiction of the

**3.** Appellants conceded at oral argument that written contracts between applicators and owners of the properties where extermination is to take place do not amount to "labeling" and therefore are not preempted by federal law.

EPA. Indeed, the General Counsel of the EPA has advised that the New York regulations do not contravene § 24(b): "[I]nterpreting 'accompanies' strictly in terms of physical presence would result in clearly extraneous material such as the logo on the applicator's hat and the license plate on the vehicle in which the pesticide is transported being considered labeling." Letter from James C. Nelson, Acting Assoc. Gen. Counsel, Pesticides and Toxic Substances Div., EPA, to Marc S. Gerstman, Deputy Comm'r and Gen. Counsel, N.Y. Dep't of Environ. Conserv. (Jan. 17, 1989). While we do not rest our decision on a deferral to the EPA's interpretation of the statute, we note that our holding is consistent with the EPA's position that "labeling" comprises those materials designed to accompany the product through the stream of commerce to the end user, but not those designed to notify purchasers of services or the general public.

In sum, Congress intended to moderate the behavior of people who sell and apply pesticides. Because the New York provisions are designed to warn the public at large, they do not constitute preempted "labeling" under FIFRA.

Affirmed.